UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| JAMES K. WHITTINGTON | CIVIL ACTION NO. 08-1418 |
| -vs- | JUDGE DRELL |
| RANDY J. MAXWELL, et al. | MAGISTRATE JUDGE KIRK |

# RULING

Before the Court is a motion for summary judgment filed by the remaining Defendants, Randy J. Maxwell, Sheriff of Concordia Parish; Jimmy Darden, former Deputy Sheriff; and John F. Johnson, former District Attorney for Concordia Parish.[1] (Document No. 62.) Plaintiff has opposed the motion, and the Court finds no need for oral argument. For the reasons set forth herein, the motion will be granted in part and denied in part.

## BACKGROUND

*Procedural History*

In the Complaint filed September 25, 2008,[2] James K. "Jim" Whittington contends he sustained damages at the hands of Defendants secondary to his June 3, 2004 arrest

---

[1] Defendant, Leo Boothe, was previously dismissed by a Judgment dated June 10, 2009. (Document No. 42.) The "Concordia Parish Sheriff's Department" and the "District Attorney's Office" were dismissed by a Judgment signed November 4, 2009. (Document No. 55.)

[2] The Court notes, with some curiosity, the "Joint Pre-Trial Stipulations" submitted by the parties on August 5, 2010 list as an "uncontested material fact" that this suit was filed on December 14, 2009. (Document No. 70, p. 4.) This date is reiterated in the Statements of Uncontested Facts filed by both sides. (Document No. 62-2 and Document No. 64-1.) According to the Court's Case Management/Electronic Case Filing ("CM/ECF") system, the Complaint was filed on September 25, 2008, and no filings of any kind were made in this litigation on December 14, 2009.

and subsequent proceedings. Our reading of Plaintiff's Complaint reveals at least three separate causes of action: (1) a claim under 42 U.S.C. § 1983 that Defendants, acting under color of state law, deprived him of his First Amendment right to complain about perceived malfeasance in office; (2) a claim under § 1983 that Defendants, acting under color of state law, deprived him of his First, Fourth and/or Fourteenth Amendment rights to be free from malicious prosecution[3]; and (3) a claim under Louisiana state law for malicious prosecution.[4] Plaintiff seeks compensatory and punitive damages as well as equitable relief and attorney's fees. Defendants deny the allegations and assert various affirmative defenses, including failure of the Complaint to state a cognizable claim and qualified immunity.

## *Substantive Allegations*

Plaintiff, Whittington, contends that in 2003, he decided to run for Sheriff of Concordia Parish against the incumbent, Defendant Randy Maxwell. During the race, Whittington asserted that one of Maxwell's deputies, Defendant Jimmy Darden, had some personal criminal difficulties in Mississippi, which, according to Plaintiff, evidenced mismanagement of the Concordia Parish Sheriff's Office. Maxwell and Darden

---

[3] Regarding this particular claim, we are well aware of the Fifth Circuit's determination that no "freestanding" § 1983 claim based solely on malicious prosecution is viable. "Rather, the claimant must allege that officials violated specific constitutional rights in connection with a malicious prosecution." Cuadra v. Houston Independent School Dist., 626 F.3d 808, 812 (5th Cir. 2010) (internal quotations omitted) [citing Castellano v. Fragozo, 352 F.3d 939, 945 (5th Cir. 2003)]. In their motion for summary judgment, Defendants do not seek dismissal of any portion of Plaintiff's § 1983 claims on this ground. This Court finds no basis for *sua sponte* dismissal of any § 1983 claims on this basis, given that the factual allegations in Plaintiff's Complaint and the evidence presented in connection with the current motion allude to potential free speech and liberty deprivations that could rise to a Constitutional level.

[4] Plaintiff admits that any claim he might have had under § 1983 for false arrest is "procedurally time-barred." (Document No. 1, ¶ 26.)

2

disputed the claims, and Plaintiff asserts significant political acrimony ensued. Maxwell eventually defeated Whittington in the general election and won a run-off election in November 2003 against a different candidate.

The parties agree that approximately six months later, on May 19, 2004, Teresa Berry gave a voluntary statement concerning events she claimed occurred in March 2004. Specifically, Ms. Berry said Whittington harassed her by making multiple phone calls to her, and that he took two rings from her fingers. Arrest warrants were issued for Whittington on May 20, 2004 for the crimes of Simple Robbery (La. R.S. 14:65), Stalking (La. R.S. 14:40.2); and telephone harassment (La. R.S. 14:285). Whittington was arrested on these charges on June 3, 2004. A preliminary hearing was held July 14, 2004, "and probable cause was found after evidence and testimony were presented by both sides."[5] (Document No. 70, p. 4.)

Whittington further contends that, despite the fact he only had one prior misdemeanor conviction, his bond was fixed by Judge Leo Boothe at $175,000.00. Plaintiff was unable to post this bond, and he was held in jail for more than fifty days. At least part of that time was spent in a facility in Franklin Parish. Plaintiff was released after Judge Boothe reduced the bond in late July 2004. Subsequently, Whittington claims he learned Maxwell, Defendant John Johnson, and Judge Boothe had engaged in improper *ex parte* communication regarding Plaintiff's criminal proceeding. Therefore, Whittington sought recusal of Judge Boothe and Johnson, who was the District

---

[5] A review of the Preliminary Examination transcript reveals this obviously applies only to the arrest. (Document No. 1, Exhibit F.)

Attorney. Judge Kathy Johnson granted Plaintiff's motion following an evidentiary hearing on September 1, 2006.[6]

In September 2007, Whittington moved to quash all charges against him on the grounds that more than two years had passed since the filing of the bills of information, and more than one year had passed since the recusal motion had been decided. The criminal cases were thereafter dismissed.

In his Complaint, Whittington argues the charges against him were,

> manufactured [by Maxwell and/or Darden] . . . in order to carry out a political vendetta against [Whittington] as retribution for [his] participation as a candidate in the Campaign for Sheriff during 2003; as retribution for [his] refusal to step down as an elected Justice of the Peace; and as retribution for having filed a complaint with the Judicial commission against Boothe for ethical misconduct involving a prior criminal prosecution of Petitioner as Justice of the Peace.

(Document No. 1, ¶ 14.)

In response, Defendants argue Whittington was properly arrested pursuant to the accusations made by Ms. Berry; neither Maxwell nor Darden was involved in the actual arrest; no evidence of malicious prosecution exists; Maxwell and Darden are entitled to qualified immunity; and Johnson, the former District Attorney, is protected by the doctrine of prosecutorial immunity.

---

[6] A transcript of the Recusal Hearing is attached to Plaintiff's Complaint. In rendering her decision, Judge Johnson stated: "This is a case that draws attention wherein the public can, in fact, question actions that have been taken in this case. This case is a case that up to this point just sounds bad. Sounds like a case of political vendettaism. There are too many instances where various officials have been contacted about pursuing the case against Mr. Whittington." (Document No. 1, Exhibit G, p. 67.)

## ANALYSIS

### *Summary Judgment Standard*

As the Fifth Circuit Court of Appeals recently explained in Seacor Holdings, Inc. v. Commonwealth Ins. Co., 2011 WL 983117 at *3 (5th Cir. 2011):

> A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); see Celotex Corp v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Effective December 1, 2010, Rule 56 has been amended, and the summary judgment standard is now reflected in Rule 56(a). The amended rule contains no substantive change to the standard. An issue as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). . . . [W]e consider all evidence in the light most favorable to the party resisting the motion. Trevino v. Celanese Corp., 701 F.2d 397, 407 (5th Cir. 1983).

(Quotations and internal footnote references omitted.)

### *Claims Against Jimmy Darden*

Defendants are correct the summary judgment evidence does not establish Darden did anything to facilitate Whittington's arrest, prolong his incarceration, or influence his prosecution. Darden admitted he did ask people in the District Attorney's office about the status of the case, but there is no indication he took any actions beyond mere inquiry out of interest for his daughter, Becky Stephenson, who had complained Whittington had stalked her. [Document No. 62-14, pp. 32 - 33 (Jimmy Darden deposition); Document No. 65, p. 73 (Ronnie McMillan deposition); Document 65-3, pp. 37-38 (Andy Magoun deposition).] Therefore, all claims against Jimmy Darden will be dismissed.

5

### ***Capacities In Which Defendants Have Been Sued***

Although the briefing is extremely confused regarding the capacities under which Plaintiff's claims are asserted, the Complaint is clear that Defendants are named in both their individual and official capacities. (Document No. 1, p. 3.) The Supreme Court, in Hafer v. Melo, 502 U.S. 21, 25 (1991) (internal quotations and citations omitted) explained:

> [O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent. . . . Indeed, when officials sued in this capacity in federal court die or leave office, their successors automatically assume their roles in the litigation. Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, the entity's policy or custom must have played a part in the violation of federal law. For the same reason, the only immunities available to the defendant in an official-capacity action are those that the governmental entity possesses.

An example of such an "official capacity" immunity would be Eleventh Amendment sovereign immunity. Kentucky v. Graham, 473 U.S. 159, 167 (1985).

On the other hand, personal-capacity suits,

> seek to impose individual liability upon a government officer for actions taken under color of state law. Thus, on the merits, to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. While the plaintiff in a personal-capacity suit need not establish a connection to governmental policy or custom, officials sued in their personal capacities, unlike those sued in their official capacities, may assert personal immunity defenses such as objectively reasonable reliance on existing law.

Hafer, 502 U.S. at 25.

Absolute prosecutorial immunity and qualified immunity are only available to defendants in their individual capacities. See Graham, 473 U.S. at 167.

In the instant case, Defendant Johnson simply seeks dismissal of all claims against him on the basis of prosecutorial immunity. No distinction is made between official and individual capacity claims. This is obviously incorrect, since prosecutorial immunity would not be available to him in his official capacity. Regarding the alleged protection offered by qualified immunity to Maxwell, the Sheriff admits the defense would only apply to the claims brought against him in his individual capacity.

### *Prosecutorial Immunity (Defendant Johnson)*

Defendants are correct that a district attorney is immune from suit for damages under § 1983 unless he is not acting as an officer of the court. This immunity is absolute regarding activities that are "intimately associated with the judicial phase of the criminal process." Van de Kamp v. Goldstein, ___ U.S. ___, 129 S.Ct. 855, 860 (2009) [quoting Imbler v. Pachtman, 424 U.S. 409, 430 (1976)]. Such immunity for actions taken within the scope of "traditional prosecutorial duties" also extends to malicious prosecution damage claims filed in accordance with Louisiana law. Knapper v. Connick, 681 So.2d 944, 947 (La. 1996).

Plaintiff's argument against application of this immunity is that Johnson was "a very inactive D A," according to Sheriff Maxwell and former Assistant District Attorneys Ronnie McMillan and Andy Magoun. (Document No. 64, p. 25.) Specifically, Plaintiff contends:

> Thus, John Johnson in his official capacity cannot claim the privilege of absolute immunity, this owing to the fact that his culpability lies in his administrative style or lack of administrative style that allowed the vacuum of authority to be filled with Sheriff Maxwell's private, personal agenda against Petitioner.

7

Id.

As we made clear above, absolute immunity is a personal immunity available to the individual, and it has no applicability to any claims against Johnson in his official capacity. Therefore, Plaintiff's argument that Johnson, in his official capacity, should have some liability for a policy or custom created within the District Attorney's Office by his "administrative style" is completely unresponsive to Defendants' assertion he is entitled to claim prosecutorial immunity.

Regarding Johnson's individual behavior on the Whittington case, a thorough review of the depositions and other evidence submitted in support of Defendants' motion shows the District Attorney in the Seventh Judicial District, which covers Concordia and Catahoula Parishes, has two offices. Johnson spent most of his time in the Catahoula Parish office. [Document No. 65-2, p. 2 (John Johnson deposition).] Johnson suffered a series of personal problems beginning on August 31, 2002 that kept him mostly out of the Concordia Parish office for two or three years. (Document No. 65-2, p. 42.) His only involvement in Whittington's case was interviewing Theresa Berry and her mother and telling his Assistant District Attorney, Brad Burget, to handle the case as Burget thought best. (Document No. 65-2, pp. 37, and 41 - 42.) There is no evidence Johnson did anything to coerce Theresa Berry or Becky Stephenson regarding their statements against Mr. Whittington. [Document No. 65, pp. 59 - 60 (Ronnie McMillan deposition); Document No. 65-3, pp. 37 - 38 (Andy Magoun deposition).] Likewise, there is no evidence Johnson took any personal action outside the realm of his duties as District Attorney to affect Whittington's term of pretrial incarceration or bond amount.

Under these circumstances, the claim of prosecutorial immunity is well-taken. Therefore, all Plaintiff's claims against John Johnson, in his individual capacity only, will be dismissed.[7] The claims against John Johnson in his official capacity will remain. However, since John Johnson is no longer the District Attorney in Concordia Parish, Plaintiff will be given ten (10) days from the date of this Ruling to amend his Complaint to substitute the current District Attorney as the proper party, if he wishes to do so. If this substitution is not made, Plaintiff's claims against the District Attorney, in his official capacity, will be dismissed.

Parenthetically, the Court questions the validity of any § 1983 claims against the District Attorney in his official capacity, given the absence in the Complaint of allegations Plaintiff's situation resulted from application of any particular policy or custom of the District Attorney. However, this issue has not been briefed or addressed by the parties and is not properly before the Court at this time.

### *Qualified Immunity (Defendant Maxwell)*

The Fifth Circuit Court of Appeals explained in Freeman v. Gore, 483 F.3d 404, 410-11 (5th Cir. 2007) (internal citations omitted):

> [A] court applies a two-step analysis to determine whether a defendant is entitled to summary judgment on the basis of qualified immunity. First, we determine whether, viewing the summary judgment evidence in the light most favorable to the plaintiff, the defendant violated the plaintiff's constitutional rights. If not, [the] analysis ends. If so, we next consider whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question. To make this

---

[7] Although personal immunities such as prosecutorial and qualified immunity are applicable to claims for monetary damages only [see Behrens v. Pelletier, 516 U.S. 299, 312 (1996)], Plaintiff's demand for injunctive relief in the instant case is wholly inapplicable to John Johnson, because he is no longer District Attorney in Concordia Parish.

9

> determination, the court applies an objective standard based on the viewpoint of a reasonable official in light of the information then available to the defendant and the law that was clearly established at the time of the defendant's actions.

As noted above, Plaintiff's § 1983 claims are based, at least in part, on an alleged deprivation (through retaliation) of his First Amendment[8] right to report malfeasance in the Sheriff's office,[9] and on an alleged deprivation of his liberty interests under the Fourth and the Fourteenth Amendments[10].

At this point, we find no need to conduct an exhaustive analysis of the legal standards applicable to the protection of these rights, in light of the evidence concerning Maxwell's position and conduct. Maxwell began serving as Concordia Parish Sheriff in 1990, and he considered himself the Parish's "chief law enforcement officer." [Document No. 65-4, pp. 6 and 11. (Randy Maxwell deposition).] As such, he would certainly be aware that under any interpretation of the law, it is improper to detain an individual and influence a criminal proceeding for the purposes of fulfilling a political vendetta. Although we are not making a determination that such behavior occurred, a review of the evidence presented so far creates genuine issues of material fact regarding Maxwell's conduct. For example, Ronnie McMillan, a former Assistant District Attorney in Concordia Parish, testified Maxwell attempted to influence how another Assistant District Attorney, Brad Burget, handled Whittington's case. (Document No. 65, pp. 34 -

---

[8] This right is made applicable to the states through the Fourteenth Amendment. See Kinney v. Weaver, 367 F.3d 337, 355 (5th Cir. 2004).

[9] See Hartman v. Moore, 547 U.S. 250, 256 (2006).

[10] See Albright v. Oliver, 510 U.S. 266 (1994).

36 and 64 - 65.) Maxwell, however, stated his only discussions with the Assistant District Attorneys concerning Whittington's case involved general monitoring, such as he would have done on any other matter. (Document No. 65-4, pp. 52 - 55.) Jim Boyd said he heard Maxwell comment that Whittington would be "dealt with after the election," a statement Boyd took to mean Whittington would be disciplined following the 2003 race. (Boyd deposition, pp. 14 and 45 - 46.) Additionally, Maxwell could not explain why Whittington was housed in an out-of-parish jail beginning on the date of his arrest (Document No. 65-4, p. 59), while Jim Boyd testified a male pretrial detainee with no medical or safety issues would only be confined outside of Concordia Parish to make visitation harder and to punish the individual. (Boyd deposition, p. 27.)

Other pertinent factual disputes are created by the more than 800 pages of exhibits attached to the motion for summary judgment and the opposition memorandum, but the Court finds the above enumeration sufficient to defeat Maxwell's qualified immunity defense at this juncture.

### *Malicious Prosecution*

The parties are correct that the elements of a malicious prosecution claim under Louisiana law are as follows:

> (1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; [and] (6) damage conforming to legal standards resulting to plaintiff.[11]

---

[11] Defendants' motion does not contest the second element, legal causation by the present defendants, or the sixth element, damages.

11

<u>Piazza v. Mayne</u>, 217 F.3d 239, 245 (5th Cir. 2000) [citing <u>Miller v. East Baton Rouge Parish Sheriff's Dep't.</u>, 511 So.2d 446, 452 (La. 1987)].

*Commencement/Continuation of the Prosecution*

With no case citations in support of their position, Defendants contend the first element is not satisfied, because the complainant, Theresa Berry, not Sheriff Maxwell or the District Attorney, is the one who "commenced" the criminal proceeding. (Document No. 62-1, p. 9.) This interpretation completely disregards the "continuance of an original criminal proceeding" element and improperly narrows the meaning of "commencement" as enunciated by the Louisiana jurisprudence. See <u>Miller</u>, 511 So.2d at 453 and cases cited therein. The depositions submitted with the motion and opposition create a genuine issue of material fact regarding Defendants' conduct regarding the Whittington prosecution. For example, Ronnie McMillan testified Maxwell expressed opinions on how the District Attorney should prosecute cases, including Whittington's case; Maxwell had significant influence over the District Attorney's office; Maxwell leaned on Brad Burget to compel him to take particular positions regarding Whittington's prosecution; the purpose of the D.A.'s office was to please the Sheriff; and Maxwell was unhappy with Burget's determination that the evidence was insufficient to sustain a robbery conviction against Whittington. (Document No. 65, pp. 12-13, 34-36, and 63-65.) However, Maxwell said he had no particular involvement regarding continuation of the Whittington prosecution other than general monitoring of the status of the case. (Document No. 65-4, pp. 44-45.) Accordingly, summary judgment in Defendants' favor on this element is not supported.

*Bona Fide Termination*

Defendants next argue the underlying criminal charges were dismissed for lack of prosecution, not on the merits, such that no bona fide termination in Plaintiff's favor has occurred. In support of their position, they cite Savoie v. Rubin, 820 So.2d 486 (La. 2002) for the proposition that a procedural dismissal does not satisfy the bona fide termination element. We find this case to be distinguishable, because it dealt with an interlocutory judgment in a civil matter and the interpretation of the Louisiana Code of Civil Procedure, not with a criminal proceeding.

Defendants also rely on Deville v. Marcantel, 567 F.3d 156, 173 (5th Cir. 2009) to support their argument that a procedural dismissal of criminal charges without prejudice does not equate to a bona fide termination. This case is, likewise, inapplicable. In Deville, the dismissal was effectuated under article 691 of the Louisiana Code of Criminal Procedure, which gives a District Attorney the discretion to dismiss an indictment or a count in an indictment without consent of the court.

In the instant case, however, Judge Johnson dismissed the charges pursuant to article 578 of the Louisiana Code of Criminal Procedure,[12] which provides, in pertinent part:

> [N]o trial shall be commenced nor any bail obligation be enforceable:
>
> * * *
>
> (2) In other felony cases after two years from the date of institution of the prosecution; and
>
> (3) In misdemeanor cases after one year from the date of institution of the prosecution."

---

[12] Document No. 1, Exhibit H.

13

In <u>Heck v. Humphrey</u>, 512 U.S. 477, 485 (1994), the Supreme Court explained that "bona fide termination" means the prior criminal proceeding was resolved "in favor of the accused." Justice Scalia, writing for the majority, noted that the purpose of this rule is to prevent a convicted criminal defendant from mounting "a collateral attack on the conviction through the vehicle of a civil suit."

The documents from state court regarding dismissal of the charges against Whittington are internally inconsistent. The "Amended Order" signed by Judge Kathy Johnson on September 25, 2007 shows all pending cases against Plaintiff were dismissed with prejudice under Louisiana Code of Criminal Procedure article 578, because they were not timely tried.[13] Alternatively, Judge Johnson ordered the Louisiana Attorney General's office to show cause on October 3, 2007 why the case should not be dismissed with prejudice. On September 26, 2007, a certified copy of the Amended Order was sent by certified mail to the Louisiana Attorney General. The Minutes of Court for October 3, 2007 show no representative of the Attorney General's office appeared. Despite the September 25, 2007 dismissal with prejudice in the absence of an appearance by the Attorney General, the October 3rd court minutes show a dismissal without prejudice. (Document No. 1, Exhibit H.)

Combining this inconsistency with the language of <u>Heck</u>, the Court finds Defendants have not shown they are entitled to summary judgment on the bona fide termination element.

---

[13] This could implicate a Sixth Amendment speedy trial violation.

14

*Probable Cause*

In their motion, Defendants focus only on the absence of probable cause at the time of the arrest. (Document No. 62-1, p. 10.) As set forth above, Plaintiff admitted in his Complaint that any claim for false arrest is procedurally time-barred. (Document No. 1, ¶ 26.) Defendants' failure to enunciate the issue properly is enough to deny summary judgment on this element. Additionally, the evidence provided does not establish entitlement to summary judgment on the actual question, which is whether Plaintiff can "sustain the burden of proof that the criminal proceeding was . . . continued without 'probable cause.'" Miller, 511 So.2d at 452. As we have already explained, the depositions show Ronnie McMillan and Brad Burget both questioned at least the continuation of the prosecution on the robbery charge, but Maxwell exerted influence over them in an effort to control the case. However, Maxwell and Johnson deny any such untoward overtures. This factual dispute precludes summary judgment.[14]

*Malice*

Defendants admit malice is inferred when there is a lack of probable cause. Jones v. Soileau, 448 So.2d 1268, 1273 (La. 1984). Therefore, since summary judgment cannot be entered on the probable cause element, neither can it be granted regarding malice. For purposes of being thorough, however, we will address Defendants' claim that the summary judgment evidence successfully rebuts any malice determination by undercutting the inference. Specifically, Defendants contend they had no role in the filing of Theresa Berry's complaint; Whittington's loss of the election was "completely

---

[14] The Court also notes an issue exists regarding whether the probable cause finding made by Judge Boothe, who was later recused, has any import in the malicious prosecution context.

irrelevant to the issues of his harassment and robbery" of Berry; and "[D]efendants had no effect on the prosecution of this matter." (Document No. 62-1, p. 12.) These arguments, again, miss the mark. The issue is not the commencement of the prosecution, but its continuation. Further, the deposition discrepancies outlined above reveal a genuine issue of material fact exists regarding Maxwell's motivation and influence on the prosecution. Summary judgment is not supported on the malice element or on the totality of the malicious prosecution claim.

## CONCLUSION

For the reasons articulated above, Defendants' motion for summary judgment (Document No. 62) will be **GRANTED IN PART** to the extent that Plaintiff's claims against Jimmy Darden will be dismissed with prejudice, and Plaintiff's claims against John Johnson, in his individual capacity only, will be dismissed with prejudice. The motion will be **DENIED IN ALL OTHER RESPECTS**.

Because the claims against John Johnson in his official capacity will remain, and since John Johnson is no longer the District Attorney in Concordia Parish, Plaintiff will be given ten (10) days from the date of this Ruling to amend his Complaint to substitute the current District Attorney as the proper party, if he wishes to do so. If this substitution is not made, Plaintiff's claims against the District Attorney, in his official capacity, will be dismissed.

SIGNED on this 31st day of March, 2011 at Alexandria, Louisiana.

DEE D. DRELL
UNITED STATES DISTRICT JUDGE