RECEIVED
IN ALEXANDRIA, LA.

DEC 2 8 2012

TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| JAMES K. WHITTINGTON | CIVIL ACTION NO. 08-1418 |
| -vs- | JUDGE DRELL |
| RANDY J. MAXWELL | MAGISTRATE JUDGE KIRK |

### RULING

Before the Court are the Motion for New Trial and/or in the Alternative Motion for Judgment Notwithstanding the Verdict and Motion for Sanctions Based Upon Perjury of a Witness filed by Plaintiff James Whittington and the Cross Motion for Sanctions filed by Defendant Randy Maxwell. (Docs. 127; 129). All responses have been filed, and the matter is ready for disposition. For the following reasons, the motions will be DENIED.

I. **Background**

The facts underlying this case occurred in 2003, when Whittington was running for Sheriff of Concordia Parish against incumbent Sheriff Randy Maxwell. (Doc. 1). Whittington's campaign advertisements contained information about Maxwell's Deputy Sheriff, Jimmy Darden, who was arrested for possession of marijuana in Pike County, Mississippi. (Doc. 1). Whittington believed information about the arrest evidenced mismanagement in the Concordia Parish Sheriff's Office. (Doc. 1). Despite the arrest allegations, Maxwell won the election. (Doc. 1).

1

On June 3, 2004, Whittington was arrested for telephone harassment, simple robbery, and stalking based on allegations from Teresa Berry. (Doc. 1, at Ex. B). His bond was fixed at $175,000, and he spent fifty-seven days in parish jail until he retained legal counsel and filed a Motion to Reduce Bail. (Doc. 1, at Ex. C). Whittington successfully moved to recuse Judge Leo Boothe and District Attorney John Johnson. (Doc. 1, at Ex. G). Following the court-ordered recusal, no further steps were taken for more than two years to prosecute Whittington. Pursuant to a Motion to Quash in state court, all charges against Whittington were dismissed without adjudication on October 3, 2007. (Doc. 1, at Ex. H).

On September 19, 2008, Brad Burget, then the Assistant District Attorney for Concordia Parish, made public statements published in The Natchez Democrat claiming Maxwell's intention was to obtain a felony conviction against Whittington to preclude him from seeking future political office. (Doc. 1, at Ex. I). On September 25, 2008, Whittington filed this Complaint against Sheriff Maxwell, Deputy Sheriff Darden, District Attorney Johnson, the Concordia Parish Sheriff's Department, the Concordia Parish Office of the District Attorney, and Judge Leo Boothe District Judge for Division B of the Seventh Judicial District. (Doc. 1). He alleged causes of action for malicious prosecution, conspiracy, and state law malicious prosecution. (Doc. 1).

Early on, this Court found Judge Leo Boothe was entitled to judicial immunity in his personal and official capacities, and therefore dismissed him from the proceeding. (Docs. 41, 42). We also dismissed the Concordia Parish Sheriff's Department and the Concordia Parish District Attorney's Office from the proceeding because both were

immune from suit under Louisiana law. (Doc. 55). Finally, we granted summary judgment in favor of Defendants Darden and Johnson. (Docs. 81, 82). None of the summary judgment evidence showed "Darden did anything to facilitate Whittington's arrest, prolong his incarceration, or influence his prosecution." (Doc. 81). Additionally, we found Defendant Johnson had prosecutorial immunity in his individual capacity because there was no evidence he did anything to coerce witnesses or took "personal action outside the realm of his duties as District Attorney to affect Whittington's term of pretrial incarceration or bond amount." (Doc. 81). However, we did not immediately dismiss Whittington's claims against Johnson in his official capacity as District Attorney. Instead, we gave Whittington ten days from the date of the Ruling to substitute the current District Attorney as the proper party. (Doc. 81). Whittington failed to complete this substitution, and therefore his claims against the District Attorney in his official capacity were dismissed. (Doc. 97).

We denied Maxwell's qualified immunity defense on summary judgment because "a review of the evidence presented so far creates genuine issues of material fact regarding Maxwell's conduct." (Doc. 81). Maxwell filed an interlocutory appeal with the United States Fifth Circuit, which affirmed our denial of summary judgment. (Doc. 90).

At trial, we granted Judgment as a Matter of Law in favor of Maxwell concerning the Fourth Amendment claim with regard to Whittington's incarceration. We found since an impartial magistrate judge had set Whittington's bail, there was no conduct rising to the level of a federal constitutional violation. After dismissing the federal claim, only a state law malicious prosecution claim remained to be decided by the jury. After a full,

three day, jury trial, the jury returned with a verdict for the defense on the state law malicious prosecution claim. (Doc. 117).

In the current motion, Whittington asserts he obtained after trial a newly discovered video recording supposedly proving Seventh Judicial District Court District Attorney Brad Burget gave perjured testimony at trial, as compared with statements made in the video recording. (Doc. 127-1). Whittington claims this alleged contradictory video allows for sanctions in addition to other remedies. (Doc. 127-1). Next, Whittington alleges closing argument by Timothy Richardson, Maxwell's trial attorney, created jury confusion about the bona fide termination element of the malicious prosecution claim. (Doc. 127-1). Whittington also argues the jury failed to exercise impartial judgment and improperly made credibility determinations when considering the evidence. (Doc. 127-1).

Maxwell's cross-motion for sanctions asserts Whittington's motion has now presented false information to the Court about the same newly discovered video recording of Brad Burget. (Doc. 129). According to Maxwell, Whittington's attorney already knew about the video recording, had access to the video recording, and presented information from the video recording at trial. (Doc. 129).

II. **Law & Analysis**

### A. Motion for Judgment Notwithstanding the Verdict

In order to make a motion for judgment notwithstanding the verdict under Fed. Rule Civ. Proc. 50(b), the movant must make a pre-verdict motion under Rule 50(a). <u>Allied Bank-West, N.A. v. Stein</u>, 996 F.2d 111, 115 (5th Cir. 1993).

> If the court does not grant a motion for judgment as a matter of law
> made under Rule 50(a), the court is considered to have submitted the

> action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment-- or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged--the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may:
> (1) allow judgment on the verdict, if the jury returned a verdict;
> (2) order a new trial; or
> (3) direct the entry of judgment as a matter of law.

Fed. R. Civ. Proc. 50(b). "[T]he Court should consider all of the evidence- not just the evidence which supports the non-mover's case- but in the light and with all reasonable inferences most favorable to the party opposed to the motion." Boeing Company v. Shipman, 411 F.2d 365, 374 (5th Cir. 1969) (en banc). A judgment notwithstanding the verdict should not be granted unless the evidence, together with all inferences that can reasonably be drawn therefrom, is so one-sided that reasonable men could not disagree on the verdict. O'Neil v. W. R. Grace & Co., 410 F.2d 908, 911 (5th Cir. 1969). If possible, the court must validate the jury verdict. Gaspard v. Taylor Diving & Salvage Co., 649 F.2d 372, 374 n.2 (5th Cir. 1981).

In the case before us, the evidence and inferences reasonably drawn therefrom could cause reasonable persons to disagree on a verdict. There is evidence Whittington's bail was set by an impartial magistrate, thereby showing a lack of bias. (Doc. 117). In addition, Brad Burget testified consistently with his prior statement in the video recording, that he did not believe Whittington should be prosecuted for a felony, but should have been prosecuted with misdemeanors. (Docs. 127-4 (manual attachment DVD); 130). The evidence in this case is not one-sided, and therefore Whittington is not entitled to judgment as a matter of law.

## B. Motion for a New Trial

> The court may, on motion, grant a new trial on all or some of the issues--
> and to any party--as follows:
> (A) after a jury trial, for any reason for which a new trial has heretofore
> been granted in an action at law in federal court[.]

Fed. R. Civ. Proc. 59(a). "A new trial may be appropriate if the verdict is against the weight of the evidence, the amount awarded is excessive, or the trial was unfair or marred by prejudicial error." Smith v. Transworld Drilling Co., 773 F.2d 610, 613 (5th Cir. 1985). A judge is free to use his discretion when considering whether to grant a new trial. Scott v. Monsanto Co., 868 F.2d 786, 789 (5th Cir. 1989).

### 1. *Newly Discovered Evidence*

When a motion for a new trial is made because of newly discovered evidence, the party bringing the motion must satisfy four prerequisites:

> (i) the evidence was unknown to the defendant at the time of trial and is in fact newly discovered, (ii) the evidence is material, (iii) the nature of the evidence is such that it would probably produce a different result at a new trial, and (iv) the recent discovery of the evidence is in no wise [sic] attributable to a previous lack of diligence on the part of the movant.

United States v. Metz, 652 F.2d 478, 479 (5th Cir. 1981).

Perjury occurs when a sworn witness "willfully subscribes as true any material matter which he does not believe to be true." 18 U.S.C. § 1621(2). A conviction for perjury requires "[p]roof beyond a reasonable doubt." § 1623.

Plaintiff claims the video recording obtained after trial shows Brad Burget perjured himself at trial. (Doc. 127). According to Plaintiff, the video recording was

received from an anonymous source on May 14, 2012 with "2007 Judges Race and DA's Race Video Forum" written on the edge. (Doc. 127-1).

Contrary to Plaintiff's assertion, the alleged new evidence is not new at all, and Brad Burget's testimony compared with his statements on the video recording does not amount to perjury. During the direct examination of Brad Burget, Plaintiff presented a newspaper article containing the exact quotations at issue apparently extracted from the live forum where the video was made. (Doc. 130, at 54-55).[1] The content on the video recording was not unknown to Plaintiff because he had access to—and actually used—the evidence at issue during trial. In addition, and even more to the point, the content in the video recording does not directly contradict Mr. Burget's trial testimony. While Mr. Burget's trial testimony was more detailed than the comments made by him in the video recording, there is nothing contradictory nor substantively different enough to suggest perjury.

2. *Jury Confusion*

Plaintiff claims a statement from the closing argument of Defendant's counsel created jury confusion thereby causing the jury to rule in favor of Defendant. (Doc. 127). However, we note Defendant's statement was true and consistent with our jury instructions. (Doc. 127-3).

---

[1] The September 19, 2008 edition of The Natchez Democrat included the following: "Burget said he stood up to the machine when he refused to prosecute a felony robbery case against former sheriff candidate James Whittington because it was at best a theft. Burget said he believed Sheriff Randy Maxwell wanted him to prosecute the case as a felony to keep Whittington out of future campaigns, and he testified in court that the sheriff had asked him to prosecute the case as a felony." (Doc. 130, at 55).

The Court's jury instructions included the two components of the contested statement—the bona fide termination element and the fact that there was never an adjudication of guilt or innocense in the underlying prosecution.[2] The jury instructions also indicated closing arguments "are not evidence and are not instructions on the law," thereby negating any potential confusion created by the contested statement. (Doc. 127-3).

> When a deliberating jury expresses confusion and difficulty over an issue submitted to it, the trial court's task is to clear that confusion away with concrete accuracy. When evaluating the adequacy of supplemental jury instructions, we ask whether the court's answer was reasonably responsive to the jury's question and whether the original and supplemental instructions as a whole allowed the jury to understand the issue presented to it. A trial judge is afforded great discretion in formulating a response to jury questions. . . . If, in response to a jury question, the trial court directs the jury's attention to the original instructions, the response will be deemed sufficient if the original charge is an accurate statement of the law.

United States v. Marshall, 283 F. App'x 268, 278-79 (5th Cir. 2008) (internal citations and quotations omitted).

While the jury requested additional information about the bona fide termination element, we determined no further instruction would be given following a record discussion with counsel for both parties. (Doc. 129). The jury instructions contain an accurate statement of the elements of a malicious prosecution claim and the undisputed fact that there was never an adjudication of the charges at issue in state court. (Doc. 127-3). Therefore, the accuracy of the original charge is not in

---

[2] The jury instructions refer to these issues, respectively, as follows:"(2) the proceeding was terminated in good faith in favor of the plaintiff;" and "[i]t is undisputed that the underlying charges were not taken to trial." (Doc. 27-3).

dispute, and we carefully exercised our discretion when we decided not to provide supplemental information to expand the jury charge in response to the jury's question.

### 3. *Jury's Failure to Exercise Impartial Judgment*

Whittington claims the jury should have discredited testimony from Defendant's witnesses Brad Burget and Leo Boothe, and its failure to do so was a failure to exercise impartial judgment. (Doc. 127-1). Juror impartiality is of the utmost importance in our system. See Virgil v. Dretke, 446 F.3d 598, 605 (5th Cir. 2006). There are two ways to establish juror impartiality: implied bias and express bias. Solis v. Cockrell, 342 F.3d 392, 395 (5th Cir. 2003). Express bias is an actual bias against a party, while implied bias is "conclusively presumed as a matter of law." Id. (internal citations and quotations omitted). Here, Whittington does not present any evidence showing actual bias or allowing for any presumption of bias. There is nothing in the record to give us even the slightest impression that any member of the jury had a bias for or against either party. Jury selection was without incident and nothing in the trial even slightly suggested that there was any lack of impartiality.

### C. Motion for Sanctions

As we have explained, Plaintiff requested sanctions because of the alleged perjury from Brad Burget, supposedly occurring when he testified in court as compared with the earlier video recording. (Doc. 127). In response, Defendant submitted a cross motion for sanctions because, he says, there is evidence Plaintiff knew of the video recording despite the allegation otherwise. (Doc. 129). In response,

Plaintiff claims the video recording Defendant refers to in its opposition is a different one from the video recording Plaintiff refers to in its motion. (Doc. 132).

Federal Rule of Civil Procedure 11(b) describes an attorney's representations to the court when signing a pleading, motion, or other paper.

> By presenting to the court a pleading, written motion, or other paper-- whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. Proc. 11(b).

In the United States Fifth Circuit, Rule 11 requires counsel to fulfill three requirements:

> (1) counsel must make a reasonable inquiry into the factual basis of any pleading, motion, or other paper; (2) counsel must make a reasonable inquiry into the law; and (3) counsel must not sign a pleading, motion, or other paper intended to delay proceedings, harass another party, or increase the costs of litigation.

St. Amant v. Bernard, 859 F.2d 379, 382 (5th Cir. 1988).

Here, sanctions will not be levied against either party because neither has shown an improper purpose, complete frivolity, or lack of evidentiary support. While their positions were both weak, we determine that each party had a reasonable belief

concerning the nature and contents of the issues in their motion, and neither has provided enough evidence to this Court to warrant sanctions.

### D. Conclusion

For the reasons detailed above, Plaintiff's Motion for New Trial and/or in the Alternative Motion for Judgment Notwithstanding the Verdict and Motion for Sanctions Based Upon Perjury of a Witness, and Defendant's Cross Motion for Sanctions will all be DENIED.

SIGNED on this 27 day of December, 2012 at Alexandria, Louisiana.

DEE D. DRELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT